# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

SIGNIFY HOLDING B.V.,

Plaintiff,

v.

NANOLEAF CANADA LTD.,

Defendant.

Civil Action No. 1:25-cv-3342

**<u>JURY TRIAL DEMANDED</u>**

## **<u>COMPLAINT</u>**

Plaintiff Signify Holding B.V. ("Signify") for its Complaint against Nanoleaf Canada Ltd. ("Nanoleaf") alleges as follows:

### **<u>NATURE OF THE ACTION</u>**

1.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*. including 35 U.S.C. § 271, which gives rise to the remedies specified under 35 U.S.C. §§ 281 and 283-285, by Signify against Nanoleaf for infringement of U.S. Patent Nos. 10,612,726 ("the '726 Patent"), RE49,320 ("the '320 Patent"), 9,494,730 ("the '730 Patent"), 8,378,591 ("the '591 Patent"), 8,111,022 ("the '022 Patent"), and 7,358,961 ("the '961 Patent") (collectively, "the Patents-in-Suit").

### **<u>PARTIES</u>**

2.      Plaintiff Signify (formerly known as Philips Lighting) is a corporation organized and existing under the laws of the Netherlands with its registered office at High Tech Campus 48, 5656 AE Eindhoven, The Netherlands.

3.    Upon information and belief, Nanoleaf is a corporation organized and existing under the laws of Ontario, Canada with a principal place of business at 100 Front Street E, FL 4, Toronto, Ontario, M5A 1E1, Canada.

## JURISDICTION AND VENUE

4.    This Court has subject-matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338 and because this action arises under the patent laws of the United States, 35 U.S.C. § 271, *et seq*.

5.    This Court has personal jurisdiction over Nanoleaf in this action because Nanoleaf has committed acts within this District giving rise to this action, and Nanoleaf has established minimum contacts with this forum such that the exercise of jurisdiction over Nanoleaf would not offend traditional notions of fair play and substantial justice. Nanoleaf, directly and through subsidiaries or intermediaries, has conducted business and committed and continues to commit acts of infringement in this District by, among other things, making, using, importing, offering to sell, and selling products and providing services that infringe the Asserted Patents, and/or has induced acts of patent infringement by others in this judicial district, the State of New York, and elsewhere in the United States. Personal jurisdiction by this Court over Nanoleaf is appropriate at least under a specific jurisdiction and/or stream of commerce theory. Upon information and belief, Nanoleaf imports LED products, including the infringing products in this case, through several ports of entry throughout the United States. Nanoleaf intends for its LED products to be sold throughout the United States, including New York.

6.    In addition, Nanoleaf delivers LED products, including the products accused of infringement in this case, into the stream of commerce with the expectation that they will be

purchased by customers in New York. Nanoleaf intends to and actually does serve the New York market, directly and indirectly, with its LED products.

7.      Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c) and/or 1400(b) because, on information and belief, Defendant is subject to personal jurisdiction in this District, Defendant is a foreign corporation for which venue is proper in any judicial district, and Defendant has committed acts of patent infringement in this District.

## **FACTUAL BACKGROUND**

8.      Signify is the world's largest manufacturer of light-emitting diode ("LED") lighting products and a global market leader with recognized expertise in the development and application of innovative LED lighting products and solutions. Signify's LED lighting products have been installed and utilized throughout the world, for example, on the Empire State Building (https://www.colorkinetics.com/global/showcase/empire-state-building):



The Empire State Building design is a registered trademark and used with permission by ESBC

9.      From the dawn of electric light, Signify has pioneered many of the world's major technological breakthroughs in the lighting industry. Signify and its inventors have won many awards for their lighting work, including the famed L-Prize from the U.S. Department of Energy and the Intellectual Property Owners (IPO) inventor of the year.

10.     In 2012, Signify launched Philips Hue, the world's leading smart home lighting system. Over the years, the ecosystem of Hue products has grown to include connected bulbs, luminaires, light strips, accessories, starter kits, and home security devices. *See, e.g.*, https://www.philips-hue.com/en-us.

11.     As a world leader in connected lighting, Signify's installed base of connected light points increased to 144 million by the end of 2024. For example, Signify's smart lighting consumer products—including the Philips Hue and Wiz brands—provide users with convenient, easy, and customizable lighting that can be managed through apps, connected switches, set and customizable schedules, and smart home assistants (including through voice).

12.     To protect its intellectual property resulting from its substantial investments in research and development, Signify applied for and obtained numerous patents directed to various LED inventions and technologies. For example, Signify currently has thousands of patents (approximately 17,750) and hundreds of pending patent applications covering technologies related to LED luminaires and retrofit bulbs, including the Patents-in-Suit.

13.     U.S. Patent No. 10,612,726 ("the '726 Patent"), titled "Lighting System for Color Mixing," was duly and legally issued by the United States Patent and Trademark Office on April 7, 2020. The '726 Patent generally relates to lighting system including an LED controller and an LED array which includes first and second LED sub-arrays, with the LED array being operatively coupled to the LED controller. The lighting system includes an antenna in communication with the

LED controller. First and second wavelength spectrums are provided by the first and second LED sub-arrays, respectively, and are adjustable in response to adjusting an input signal provided to the antenna. Signify Holding B.V. is the assignee and owner of all right, title, and interest in the '726 Patent, a copy of which is attached hereto as Exhibit 1.

14.    U.S. Patent No. RE49,320 ("the '320 Patent"), a reissue of U.S. Patent No. 9,184,497 ("the '497 Patent"), titled "Lighting Device with Built-in RF Antenna," was duly and legally issued by the United States Patent and Trademark Office on November 29, 2022. The '320 Patent generally relates to a lighting device having a built-in radio frequency antenna. The lighting device may include a heat sink comprising a metal with an electrical resistivity being less than 0.01 Ωm, a radio frequency communication circuit, and an antenna. Signify Holding B.V. is the assignee and owner of all right, title, and interest in the '320 Patent, a copy of which is attached hereto as Exhibit 2.

15.    U.S. Patent No. 9,494,730 ("the '730 Patent"), titled "Multiple Waveguide Edge Lit Structure," was duly and legally issued by the United States Patent and Trademark Office on November 15, 2016. The '730 Patent generally relates to a multiple waveguide edge lit structure with a frame structure. The multiple waveguide edge lit structure includes a circuit board including a first plurality of LEDs and a second plurality of LEDs. The multiple waveguide edge lit structure further includes a first and a second waveguide. A light receiving edge of the first waveguide is positioned proximal to the first plurality of LEDs, and a light receiving edge of the second waveguide is positioned proximal to the second plurality of LEDs. The multiple waveguide edge lit structure also includes a pair of attachment structures configured to keep the first waveguide and the second waveguide attached to the frame structure. Signify Holding B.V. is the assignee

and owner of all right, title, and interest in the '730 Patent, a copy of which is attached hereto as Exhibit 3.

16.     U.S. Patent No. 8,378,591 ("the '591 Patent"), titled "Light Output Device," was duly and legally issued by the United States Patent and Trademark Office on February 19, 2013. The '591 Patent relates to LED light sources. A significant issue with LED string lights is controlling the on/off state and output level of individual lights in the string, while still enabling the string to be reduced in length. The '591 Patent is directed to a new and improved light output device designed to overcome this problem in a manner not previously known in the art. Signify Holding B.V. is the assignee and owner of all right, title, and interest in the '591 Patent, a copy of which is attached hereto as Exhibit 4.

17.     U.S. Patent No. 8,111,022 ("the '022 Patent"), titled "Lighting System Comprising Interconnectable Lighting Modules," was duly and legally issued by the United States Patent and Trademark Office on February 7, 2012. The '022 Patent relates to a lighting system. The lighting system includes a plurality of interconnectable polygonal lighting modules, with each lighting module having a plurality of connection members each including at least one electrical terminal. The connection members are arranged rotationally symmetrically at the lighting module. The lighting system further includes bridge members. Each bridge member has bridge terminals and is mountable at neighboring connection members of different lighting modules, to form a bridge providing an electric connection between connection terminals of the different connection members. Signify Holding B.V. is the assignee and owner of all right, title, and interest in the '022 Patent, a copy of which is attached hereto as Exhibit 5.

18.     U.S. Patent No. 7,358,961 (the '961 Patent"), titled "User Interface for Controlling Light Emitting Diodes," was duly and legally issued by the United States Patent and Trademark

Office on April 15, 2008. The '961 Patent improves upon existing LED light sources, including the control of spectral output. At the time of the '961 Patent's invention, conventional LED light sources adjusted intensity levels of spectral output by increasing or decreasing the number of LED's receiving the specified amount of direct current. One disadvantage of these conventional light systems was the inaccuracy of spectral output. To overcome that disadvantage, the '961 Patent is directed to a unique combination of regulating the time average flow of current to achieve a desired spectral output and a touch screen interface for facilitating user control of the spectral output that improves the degree of accuracy of spectral output when compared to conventional light systems. Signify Holding B.V. is the assignee and owner of all right, title, and interest in the '961 Patent, a copy of which is attached hereto as Exhibit 6.

## DEFENDANT'S ADOPTION OF SIGNIFY'S PATENTED TECHNNOLOGIES

19.      Nanoleaf has been aware of Signify's patented technologies since at least 2016, as the parties were previously involved in a global licensing arrangement lasting nearly 3 years.

20.      On January 1, 2017, Signify (then known as Philips Lighting Holding B.V.) and Nanogrid Limited d/b/a/ Nanoleaf entered into a global licensing agreement granting access for Nanoleaf and its affiliates to certain patents for LED-based luminaires and/or retrofit bulbs. The agreement was signed by Nanogrid Limited's CEO, Gimmy Chu, who is also CEO of Nanoleaf Canada Ltd. Upon information and belief, Nanogrid Limited (a Hong Kong entity) is an affiliate of Nanoleaf Canada Ltd. (a Canadian entity).

21.      The parties' license agreement included a license to the '961 and '591 Patents. Under the licensing agreement, Nanoleaf paid royalties in connection with the sale of its LED products, including its Aurora products that are accused of infringing one or more Patents-in-Suit in this action.

22.      The agreement expired at the end of 2019, and Nanoleaf did not renew. However, Nanoleaf continues to incorporate Signify's patented technologies into its products.

23.      On or about November 26, 2018, Signify sent an email to Nanoleaf notifying it that Signify was concerned that Nanoleaf was not properly reporting sales under the agreement. As part of the November 2018 email, Signify specifically identified patent infringement concerns regarding the '961 Patent.

24.      On or about January 24, 2020, Signify sent an email to Nanoleaf notifying it of additional patent infringement concerns. The January 2020 notice specifically identified the '022 Patent.

25.      On or about March 9, 2021, Signify sent an email to Nanoleaf notifying it that Nanoleaf's products continued to utilize Signify's patented technologies. Among other patents, the March 2021 notice specifically detailed Signify's patent infringement concerns regarding the '022 Patent and '497 Patent (which was later reissued as the '320 Patent).

26.      On or about January 4, 2024, Signify sent an email to Nanoleaf notifying it that Nanoleaf's products continued to utilize Signify's patented technologies. Among other patents, the January 2024 notice specifically identified Signify's patent infringement concerns regarding the '320 Patent, '961 Patent, and '726 Patent.

27.      On or about May 7, 2024, Nanoleaf's CEO, Gimmy Chu, met with two Signify representatives in person at Nanoleaf's office in Toronto. At the meeting, Signify's representatives notified Mr. Chu that Nanoleaf's products continued to utilize Signify's patented technologies. Among other patents, Signify's representatives discussed Signify's patent infringement concerns regarding the '320 Patent, '961 Patent, '726 Patent, '591 Patent, and '730 Patent. Following the meeting, on or about May 9, 2024, Signify provided Nanoleaf with a copy of the presentation from

May 7, 2024 meeting detailing Signify's patent infringement concerns regarding the '320 Patent, '961 Patent, '726 Patent, '591 Patent, and '730 Patent.

28.     Following said correspondence and discussions between the parties (which directly involved Nanoleaf's CEO, Gimmy Chu), Nanoleaf has continued its willful infringement by manufacturing, using, offering to sell, selling, and/or distributing lighting products incorporating Signify's patented technologies. These facts, as summarized herein, reflect an egregious case of willful infringement by Nanoleaf.

## **GENERAL ALLEGATIONS**

29.     Nanoleaf has directly and indirectly infringed and continues to directly and indirectly infringe each of the Patents-in-Suit by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), and/or (c), including but not necessarily limited to one or more of making, using, selling, offering to sell, and importing into the United States, and inducing and contributing to infringement by others, in this District and elsewhere in the United States, including the products identified below.

30.     Nanoleaf's acts of infringement have caused damage to Signify. Signify is entitled to recover from Nanoleaf the damages sustained by Signify as a result of Nanoleaf's wrongful acts in an amount to be awarded at trial.

31.     Nanoleaf's infringement has been and continues to be willful. Nanoleaf has been aware of its infringement of the Patents-in-Suit since it received notice of infringement but has continued to sell infringing products despite being forewarned of its infringement.

32.     Nanoleaf has committed and continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Nanoleaf knew or should have known that its actions constituted an unjustifiably high risk of infringement.

33.     Nanoleaf's infringement of the Patents-in-Suit is causing irreparable harm for which Signify has no adequate remedy at law unless Nanoleaf is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the Patents-in-Suit.[1]

## COUNT ONE

### (Infringement of U.S. Patent No. 10,612,726)

34.     Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

35.     On information and belief, Nanoleaf has directly infringed and is directly infringing claims of the '726 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products including, but not limited to, products substantially similar to the Nanoleaf's Smart Bulbs, Smart Lightstrips, Skylight, Downlight, and/or other products with substantially similar features (collectively, the "'726 Accused Products").

36.     Signify names these exemplary infringing instrumentalities to serve as notice of Nanoleaf's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '726 Accused Products. Nanoleaf's Smart Bulbs and Skylight are a representative examples of '726 Accused Products and are shown below to demonstrate infringement of the '726 Patent.

37.     Claim 1 of the '726 Patent recites:

A lighting system, comprising:

an LED controller;

---

[1] Signify does not seek an injunction with respect to the'961 Patent.

an LED array which includes first and second LED sub-arrays, wherein the LED array is operatively coupled to the LED controller;

an antenna in communication with the LED controller;

wherein first and second wavelength spectrums provided by the first and second LED sub-arrays, respectively, are adjustable in response to adjusting an input signal provided to the antenna.

### Nanoleaf Smart Bulbs

38.    To the extent the preamble limits the claim, on information and belief, the Smart Bulb is "a lighting system." For example, this limitation is shown below.

 

39.    On information and belief, the Smart Bulb comprises "an LED controller." For example, this limitation is shown below.



40.    On information and belief, the Smart Bulb comprises "an LED array which includes first and second LED sub-arrays, wherein the LED array is operatively coupled to the LED controller." For example, this limitation is shown below.



41.    On information and belief, the Smart Bulb comprises "an antenna in communication with the LED controller." For example, this limitation is shown below.



42.    On information and belief, the Smart Bulb comprises "wherein first and second wavelength spectrums provided by the first and second LED sub-arrays, respectively, are adjustable in response to adjusting an input signal provided to the antenna." For example, this limitation is shown below.

 

### Nanoleaf Skylight

43.     To the extent the preamble limits the claim, on information and belief, the Skylight product is "a lighting system." For example, this limitation is shown below.



Source: https://nanoleaf.me/en-US/products/ceiling-lights/skylight/?category=skylight&pack=smarter-kit&size=3

44.     On information and belief, the Skylight product comprises "an LED controller." For example, this limitation is shown below.



45.     On information and belief, the Skylight product comprises "an LED array which includes first and second LED sub-arrays, wherein the LED array is operatively coupled to the LED controller." For example, this limitation is shown below.



46.     On information and belief, the Skylight product comprises "an antenna in communication with the LED controller." For example, this limitation is shown below.



47.    On information and belief, the Skylight product comprises "wherein first and second wavelength spectrums provided by the first and second LED sub-arrays, respectively, are adjustable in response to adjusting an input signal provided to the antenna." For example, this limitation is shown below.



48.    The full extent of Nanoleaf's infringement is not presently known to Signify. On information and belief, Nanoleaf has made and sold, or will make and sell, products under different names or part numbers that infringe the '726 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through

discovery or otherwise. Signify will identify each claim of the '726 Patent that is infringed and each product that Signify is aware of that infringes the '726 Patent in accordance with the applicable scheduling order in this case.

49.     On information and belief, Nanoleaf has been aware of and has had notice of the '726 Patent and its infringement of the '726 Patent since at least January 4, 2024, when it received a notice from Signify informing it of the same.

50.     On information and belief, by continuing to make, use, sell, offer to sell and/or import the '726 Accused Products on or after Nanoleaf first had notice of Signify's allegations of infringement, Nanoleaf indirectly infringed and continues to indirectly infringe at least claim 12 of the '726 Patent by active inducement under 35 U.S.C. § 271(b). Nanoleaf has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '726 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Nanoleaf has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by Nanoleaf's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '726 Accused Products in the United States. Nanoleaf has performed and continues to perform these affirmative acts with knowledge of the '726 Patent and with knowledge and intent that such actions would induce infringement of the '726 Patent by Nanoleaf's direct and indirect customers.

51.     On information and belief, by continuing to make, use, sell, offer to sell an/or import the '726 Accused Products on or after Nanoleaf first had notice of Signify's allegations of infringement, Nanoleaf indirectly infringed and continues to indirectly infringe at least claim 1 of

the '726 Patent by contributorily infringing under 35 U.S.C. § 271(c). Nanoleaf's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '726 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to Nanoleaf's customers and end-users directly infringing the '726 Patent. The '726 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Nanoleaf to be especially made or especially adapted for use in infringement of the '726 Patent.

52.    On information and belief, Nanoleaf has performed and continues to perform the above-identified acts of infringement with knowledge of the '726 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the '726 Patent. Accordingly, Nanoleaf's continued infringement of the '726 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

53.    On information and belief, Signify has suffered and continues to suffer damages as a result of Nanoleaf's infringement of the '726 Patent in an amount to be determined at trial.

54.    On information and belief, Nanoleaf's infringement of the '726 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless Nanoleaf is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '726 Patent.

55.    On information and belief, and in light of the allegations above, including Nanoleaf's willful infringement of the '726 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## COUNT TWO

### (Infringement of U.S. Patent No. RE49,320)

56.     Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

57.     On information and belief, Nanoleaf has directly infringed and is directly infringing claims of the '320 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, products substantially similar to Nanoleaf's A19 Smart Bulbs mapped below, and/or other products with substantially similar features (collectively, the "'320 Accused Products").

58.     Signify names this exemplary infringing instrumentality to serve as notice of Nanoleaf's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '320 Accused Products. Nanoleaf's A19 Smart Bulbs are a representative example of '320 Accused Products and are shown below to demonstrate infringement of the '320 Patent.

59.     Claim 1 of the '320 Patent recites:

>  A lighting device, comprising
>
> a light source comprising one or more light-emitting diodes configured for generating light along an optical axis,
>
> a heat sink comprising a metal with an electrical resistivity being less than 0.01 Ωm, and configured for removing heat produced by the light source, the heat sink forming at least a portion of an outer enclosure,
>
> a RF communication circuit, and
>
> a first antenna connected to the RF communication circuit for communicating RF control signals and arranged within the outer enclosure, wherein the lighting device comprises one or more metallic components having an extension larger than at least 1/10 of a wavelength of the RF control signals and arranged below a virtual plane drawn orthogonal to the optical axis and going through the first antenna.

60. To the extent the preamble is limiting, on information and belief, the A19 Smart Bulb is a lighting device. For example, this limitation is shown below.



61. On information and belief, the A19 Smart Bulb comprises a light source comprising one or more light-emitting diodes configured for generating light along an optical axis. For example, this limitation is shown below.



62.    On information and belief, the A19 Smart Bulb comprises a heat sink comprising a metal with an electrical resistivity being less than 0.01 Ωm,and configured for removing heat produced by the light source, the heat sink forming at least a portion of an outer enclosure. For example, this limitation is shown below.



63.    On information and belief, the heatsink of the Smart Bulb comprises a metal, such as aluminum, which has an electrical resistivity being less than 0.01 Ωm. *See e.g.,* https://www.electronics-notes.com/articles/basic_concepts/resistance/electrical-resistivity-table-materials.php (listing electrical resistivity for common materials, including aluminum).

64.    On information and belief, the A19 Smart Bulb comprises an RF communication circuit. For example, this limitation is shown below.



65.     On information and belief, the A19 Smart Bulb comprises a first antenna connected to the RF communication circuit for communicating RF control signals and arranged within the outer enclosure. For example, this limitation is shown below.



66.     On information and belief, the Smart A19 Bulb comprises one or more metallic components having an extension larger than at least 1/10 of a wavelength of the RF control signals and arranged below a virtual plane drawn orthogonal to the optical axis and going through the first antenna. For example, on information and belief, the WiFi of the Smart Bulb transmits at a frequency of 2.4GHz, which has a wavelength of 12.5cm. Further, an example of the virtual plane drawn orthogonal to the optical axis and going through the first antenna is shown below.



67.     The full extent of Nanoleaf's infringement is not presently known to Signify. On information and belief, Nanoleaf has made and sold, or will make and sell, products under different names or part numbers that infringe the '320 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '320 Patent that is infringed and each product that Signify is aware of that infringes the '320 Patent in accordance with the applicable scheduling order in this case.

68.     On information and belief, Nanoleaf has been aware of and has had notice of the '320 Patent and its infringement of the '320 Patent at least as early as January 4, 2024, when it received a notice from Signify informing it of the same.

69.     On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '320 Accused Products on or after Nanoleaf first had notice of Signify's allegations of infringement, Nanoleaf indirectly infringes and continues to indirectly infringe at least claim 1 of the '320 Patent by active inducement under 35 U.S.C. § 271(b). Nanoleaf has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '320 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Nanoleaf has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by Nanoleaf's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '320 Accused Products in the United States. Nanoleaf has performed and continues to perform these affirmative acts with knowledge of the '320 Patent and with knowledge that such actions would induce infringement of the '320 Patent by Nanoleaf's direct and indirect customers.

70.     On information and belief, by continuing to make, use, sell, offer to sell and/or import the '320 Accused Products on or after Nanoleaf first had notice of Signify's allegations of infringement, Nanoleaf indirectly infringes and continues to indirectly infringe at least claim 1 of the '320 Patent by contributorily infringing under 35 U.S.C. § 271(c). Nanoleaf's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '320 Accused Products and components thereof, including drivers within the '320 Accused Products, in this District and

elsewhere in the United States, contribute to Nanoleaf's customers and end-users directly infringing the '320 Patent. The '320 Accused Products and drivers made for use with the '320 Accused Products are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Nanoleaf to be especially made or especially adapted for use in infringement of the '320 Patent.

71.    On information and belief, Nanoleaf has performed and continues to perform the above-identified acts of infringement with knowledge of the '320 Patent and with intent, or willful blindness, that they cause the direct and indirect infringement of the '320 Patent. Accordingly, Nanoleaf's continued infringement of the '320 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

72.    On information and belief, Signify has suffered and continues to suffer damages as a result of Nanoleaf's infringement of the '320 Patent in an amount to be determined at trial.

73.    On information and belief, Nanoleaf's infringement of the '320 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless Nanoleaf is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '320 Patent.

74.    On information and belief, and in light of the allegations above, including Nanoleaf's willful infringement of the '320 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## COUNT THREE

### (Infringement of U.S. Patent No. 9,494,730)

75.    Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

76.    On information and belief, Nanoleaf has directly infringed and is directly infringing claims of the '730 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products including, but not limited to, products substantially similar to Nanoleaf's Canvas mapped below, and/or other products with substantially similar features (collectively, the "'730 Accused Products").

77.    Signify names this exemplary infringing instrumentality to serve as notice of Nanoleaf's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '730 Accused Products. Nanoleaf's Canvas is a representative example of '730 Accused Products and are shown below to demonstrate infringement of the '730 Patent.

78.    Claim 1 of the '730 Patent recites:

A multiple waveguide edge lit structure, comprising:

a frame structure;

a circuit board including a first plurality of light emitting diodes (LEDs) and a second plurality of LEDs;

a first waveguide, wherein a light receiving edge of the first waveguide is positioned proximal to the first plurality of LEDs;

a second waveguide, wherein a light receiving edge of the second waveguide is positioned proximal to the second plurality of LEDs; and

a pair of attachment structures, wherein the first waveguide and the second waveguide are attached to the frame structure by the pair of attachment structures.

79.    To the extent the preamble limits the claim, on information and belief, the Canvas is a multiple waveguide edge lit structure. For example, this limitation is shown below:



80.    On information and belief, the Canvas comprises a frame structure. For example, this limitation is shown below.



81.    On information and belief, the Canvas comprises a circuit board including a first plurality of light emitting diodes (LEDs) and a second plurality of LEDs. For example, this limitation is shown below.



82.    On information and belief, the Canvas comprises a first waveguide, wherein a light receiving edge of the first waveguide is positioned proximal to the first plurality of LEDs. For example, this limitation is shown below.



83.     On information and belief, the Canvas comprises a second waveguide, wherein a light receiving edge of the second waveguide is positioned proximal to the second plurality of LEDs. For example, this limitation is shown below.



84.    On information and belief, the Canvas comprises a pair of attachment structures, wherein the first waveguide and the second waveguide are attached to the frame structure by the pair of attachment structures. For example, this limitation is shown below.



85.    The full extent of Nanoleaf's infringement is not presently known to Signify. On information and belief, Nanoleaf has made and sold, or will make and sell, products under different names or part numbers that infringe the '730 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '730 Patent that is infringed and each product that Signify is aware of that infringes the '730 Patent in accordance with the applicable scheduling order in this case.

86.    On information and belief, Nanoleaf has been aware of and has had notice of the '730 Patent and its infringement of the '730 Patent at least as early as May 9, 2024, when it received a notice from Signify informing it of the same.

87.     On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '730 Accused Products on or after Nanoleaf first had notice of Signify's allegations of infringement, Nanoleaf indirectly infringes and continues to indirectly infringe at least claim 1 of the '730 Patent by active inducement under 35 U.S.C. § 271(b). Nanoleaf has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '730 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Nanoleaf has engaged in such conduct despite knowing that such conduct would and was intended to result in direct infringement by Nanoleaf's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '730 Accused Products in the United States. Nanoleaf has performed and continues to perform these affirmative acts with knowledge of the '730 Patent and with knowledge that such actions would induce infringement of the '730 Patent by Nanoleaf's direct and indirect customers.

88.     On information and belief, by continuing to make, use, sell, offer to sell and/or import the '730 Accused Products on or after Nanoleaf first had notice of Signify's allegations of infringement, Nanoleaf indirectly infringes and continues to indirectly infringe at least claim 1 of the '730 Patent by contributorily infringing under 35 U.S.C. § 271(c). Nanoleaf's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '730 Accused Products and components thereof, including drivers within the '730 Accused Products, in this District and elsewhere in the United States, contribute to Nanoleaf's customers and end-users directly infringing the '730 Patent. The '730 Accused Products and components thereof are not staple

articles or commodities of commerce, have no substantial non-infringing uses, and are known by Nanoleaf to be especially made or especially adapted for use in infringement of the '730 Patent.

89.     On information and belief, Nanoleaf has performed and continues to perform the above-identified acts of infringement with knowledge of the '730 Patent and with intent, or willful blindness, that they cause the direct and indirect infringement of the '730 Patent. Accordingly, Nanoleaf's continued infringement of the '730 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

90.     On information and belief, Signify has suffered and continues to suffer damages as a result of Nanoleaf's infringement of the '730 Patent in an amount to be determined at trial.

91.     On information and belief, Nanoleaf's infringement of the '730 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless Nanoleaf is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '730 Patent.

92.     On information and belief, and in light of the allegations above, including Nanoleaf's willful infringement of the '730 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## COUNT FOUR

### (Infringement of U.S. Patent No. 8,378,591)

93.     Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

94.     On information and belief, Nanoleaf has directly infringed and is directly infringing claims of the '591 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products including, but

not limited to, products substantially similar to Nanoleaf's Outdoor String Lights, Multicolor Lightstrips, Multicolor Floor Lamp and/or other products with substantially similar features (collectively, the "'591 Accused Products").

95.    Signify names this exemplary infringing instrumentality to serve as notice of Nanoleaf's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '591 Accused Products. Nanoleaf's Outdoor String Lights and Multicolor Floor Lamp are a representative example of '591 Accused Products and are shown below to demonstrate infringement of the '591 Patent.

96.    Claim 1 of the '591 Patent recites:

A light output device comprising:

a power connection for connecting to a power source;

a plurality of light source device arrangements arranged in a line extending from the power connection, with adjacent light source device arrangements in the line connected together with an electrical connector arrangement comprising at least one power supply line and at least one power return line, the connector arrangement adapted to carry at least one serial data signal; and

a plurality of control circuits, each light source device arrangement associated with a control circuit from the plurality of control circuits for providing independent control of the light source device arrangement output based on the serial data signal,

wherein when the connector arrangement between an adjacent pair of light source device arrangements is disconnected, one or more remaining light source device arrangements extending from the power source are independently controlled by the serial data signal;

wherein each control circuit comprises:

an input[2] to which a drive signal is provided,

_____

[2] Pursuant to a June 1, 2021 Certificate of Correction, "output" was corrected to be "input".

an output configured to control the respective light source device arrangement,

a control input configured to receive the serial data signal and to control a switching

of the drive signal to the output in dependence on one or more bits of the serial data signal, and

a control output configured to output the serial data signal from which the one or more bits have been removed.

**Nanoleaf Outdoor String Lights**

97.     To the extent the preamble limits the claim, on information and belief, the Outdoor String Lights are a light output device. For example, this limitation is shown below:



98.     On information and belief, the Outdoor String Lights comprise a power connection for connecting to a power source. For example, this limitation is shown below.



Source: https://nanoleaf.me/en-US/products/essentials/outdoor/multicolor-string-lights/?pack=smarter-kit&size=15

99.    On information and belief, the Outdoor String Lights comprise a plurality of light source device arrangements arranged in a line extending from the power connection, with adjacent light source device arrangements in the line connected together with an electrical connector arrangement comprising at least one power supply line and at least one power return line, the connector arrangement adapted to carry at least one serial data signal. For example, this limitation is shown below.



https://nanoleaf.me/en-US/products/essentials/outdoor/multicolor-string-lights/?pack=smarter-kit&size=15

100.    On information and belief, the Outdoor String Lights comprise a plurality of control circuits, each light source device arrangement associated with a control circuit from the plurality of control circuits for providing independent control of the light source device arrangement output based on the serial data signal. For example, each light source device arrangement is associated with a control circuit, an example of which is shown below.



101.    On information and belief, and as shown in the photo above, the control circuit of the Outdoor String Lights is a WS2814A integrated circuit manufactured by World Semi. A copy of a data sheet for the WS2814A is attached hereto as <u>Exhibit 7</u>.

102.    On information and belief, these control circuits provide for independent control of the light source device arrangement output based on the serial data signal. For example, this limitation is shown below.



Description                                                          —

Illuminate your outdoor spaces with these Smart Matter-enabled Multicolor Outdoor String Lights –the ultimate outdoor essential for every backyard bash or late-night date night. Set the mood with these uniquely shaped addressable LED bulbs with a single color, or multiple colors at once for dynamic flowing gradients.

- 20 Addressable RGBWIC LED Bulbs
- IP65 Water Resistant
- 16+ Million Colors, Tunable Whites & Animated Scenes
- Use with Wi-Fi, Bluetooth, or Matter over Wi-Fi
- Control with Attached Controller, Nanoleaf App or through a Smart Home Ecosystem

Requires a Matter compatible smart home hub and iOS/tvOS 16.5+ or Android OS 8.1+ to connect to a smart home ecosystem.

Source:https://nanoleaf.me/en-US/products/essentials/outdoor/multicolor-string-lights/?pack=smarter-kit&size=15

103.    On information and belief, when the connector arrangement between an adjacent pair of light source device arrangements of the Outdoor String Lights is disconnected, one or more remaining light source device arrangements extending from the power source are independently controlled by the serial data signal. For example, this limitation is shown below.



104.    On information and belief, the control circuits of the Outdoor String Lights comprise an input to which a drive signal is provided and an output configured to control the respective light source device arrangement. For example, this limitation is shown below.

| Pin number | Pin Symbols | Pin name | Function description |
|---|---|---|---|
| 1 | OUTR | LED driver output | RED (red) PWM control output |
| 2 | OUTG | LED driver output | GREEN (green) PWM control output |
| 3 | OUTB | LED driver output | BLUE (blue) PWM control output |
| 7 | VDD | Logic Power Supply | IC power supply |
| 8 | OUTW | LED driver output | WHITE (white) PWM control output |

*See* Ex. 7.

105.    On information and belief, the control circuits of the Outdoor String Lights comprise a control input configured to receive the serial data signal and to control a switching of

the drive signal to the output in dependence on one or more bits of the serial data signal. For example, this limitation is shown below.



| 6 | DIN | Data input | Display data input |

*See* Ex. 7.

106.    On information and belief, the control circuits of the Outdoor String Lights comprise a control output. For example, this limitation is shown below.



| 5 | DOUT | Data output | Display data cascade output |

*See* Ex. 7.

107.    On information and belief, the output of the control circuits of the Outdoor String Lights is configured to output the serial data signal from which the one or more bits have been removed. For example, this limitation is shown below.

Connection method:



*See* Ex. 7.

**Nanoleaf Multicolor Floor Lamp**

108.    To the extent the preamble limits the claim, on information and belief, the

Multicolor Floor Lamp is a light output device. For example, this limitation is shown below:



109.    On information and belief, the Multicolor Floor Lamp comprises a power connection for connecting to a power source. For example, this limitation is shown below.



110.    On information and belief, the Multicolor Floor Lamp comprises a plurality of light source device arrangements arranged in a line extending from the power connection, with adjacent light source device arrangements in the line connected together with an electrical connector arrangement comprising at least one power supply line and at least one power return line, the connector arrangement adapted to carry at least one serial data signal. For example, this limitation is shown below.



111. On information and belief, the Multicolor Floor Lamp comprise a plurality of control circuits, each light source device arrangement associated with a control circuit from the plurality of control circuits for providing independent control of the light source device arrangement output based on the serial data signal. For example, each light source device arrangement is associated with a control circuit, an example of which is shown below.



112. On information and belief, and as shown in the photo above, the control circuit of the Multicolor Floor Lamp is a SM16704 integrated circuit. A copy of a data sheet for the SM16704 integrated circuit is attached hereto as Exhibit 8.

113. On information and belief, these control circuits provide for independent control of the light source device arrangement output based on the serial data signal. For example, this limitation is shown below.



**Colors**

Color Zones: 24

Color Temperature: 2200K–6500K

Color Channel Configuration: RGBW

Color Capability: 16M+ (colors and tunable white)

Source: https://nanoleaf.me/en-US/products/essentials/multicolor-floor-lamp/?specs=true

114.    On information and belief, when the connector arrangement between an adjacent pair of light source device arrangements of the Multicolor Floor Lamp is disconnected, one or more remaining light source device arrangements extending from the power source are independently controlled by the serial data signal. For example, this limitation is shown below.



115.    On information and belief, the control circuits of the Multicolor Floor Lamp comprise an input to which a drive signal is provided and an output configured to control the respective light source device arrangement. For example, this limitation is shown below.

**Footprint**



| | | |
|---|---|---|
| 1 | OUTR | Output of RED PWM control |
| 2 | OUTG | Output of GREEN PWM control |
| 3 | OUTB | Output of BLUE PWM control |
| 4 | OUTW | Output of White PWM control |
| | | |
| 8 | VDD | IC power supply |

*See* Ex. 8.

116.    On information and belief, the control circuits of the Multicolor Floor Lamp comprise a control input configured to receive the serial data signal and to control a switching of the drive signal to the output in dependence on one or more bits of the serial data signal. For example, this limitation is shown below.



*See* Ex. 8.

117.    On information and belief, the control circuits of the Multicolor Floor Lamp comprise a control output. For example, this limitation is shown below.



*See* Ex. 8.

118.    On information and belief, the output of the control circuits of the Multicolor Floor Lamp is configured to output the serial data signal from which the one or more bits have been removed. For example, this limitation is shown below.



*See* Ex. 8.

119.    The full extent of Nanoleaf's infringement is not presently known to Signify. On information and belief, Nanoleaf has made and sold, or will make and sell, products under different names or part numbers that infringe the '591 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '591 Patent that is infringed and each product that Signify is aware of that infringes the '591 Patent in accordance with the applicable scheduling order in this case.

120.    On information and belief, Nanoleaf has been aware of and has had notice of the '591 Patent and its infringement of the '591 Patent at least as early as May 9, 2024, when it received a notice from Signify informing it of the same.

121.    On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '591 Accused Products on or after Nanoleaf first had notice of Signify's allegations of infringement, Nanoleaf indirectly infringes and continues to indirectly infringe at least claim 1 of the '591 Patent by active inducement under 35 U.S.C. § 271(b). Nanoleaf has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '591 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Nanoleaf has engaged in such conduct despite knowing that such conduct would and was intended to result in direct infringement by Nanoleaf's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '591 Accused Products in the United States. Nanoleaf has performed and continues to perform these affirmative acts with knowledge of the '591 Patent and with knowledge that such actions would induce infringement of the '591 Patent by Nanoleaf's direct and indirect customers.

122.    On information and belief, by continuing to make, use, sell, offer to sell and/or import the '591 Accused Products on or after Nanoleaf first had notice of Signify's allegations of infringement, Nanoleaf indirectly infringes and continues to indirectly infringe at least claim 1 of the '591 Patent by contributorily infringing under 35 U.S.C. § 271(c). Nanoleaf's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '591 Accused Products and components thereof, including drivers within the '591 Accused Products, in this District and elsewhere in the United States, contribute to Nanoleaf's customers and end-users directly infringing the '591 Patent. The '591 Accused Products and components thereof are not staple

articles or commodities of commerce, have no substantial non-infringing uses, and are known by Nanoleaf to be especially made or especially adapted for use in infringement of the '591 Patent.

123. On information and belief, Nanoleaf has performed and continues to perform the above-identified acts of infringement with knowledge of the '591 Patent and with intent, or willful blindness, that they cause the direct and indirect infringement of the '591 Patent. Accordingly, Nanoleaf's continued infringement of the '591 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

124. On information and belief, Signify has suffered and continues to suffer damages as a result of Nanoleaf's infringement of the '591 Patent in an amount to be determined at trial.

125. On information and belief, Nanoleaf's infringement of the '591 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless Nanoleaf is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '591 Patent.

126. On information and belief, and in light of the allegations above, including Nanoleaf's willful infringement of the '591 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

**COUNT FIVE**

**(Infringement of U.S. Patent No. 8,111,022)**

127. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

128. On information and belief, Nanoleaf has directly infringed and is directly infringing claims of the '022 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products including, but

not limited to, products substantially similar to Nanoleaf's Canvas, Aurora, Blocks, Elements, Shapes, and/or other products with substantially similar features (collectively, the "'022 Accused Products").

129.    Signify names this exemplary infringing instrumentality to serve as notice of Nanoleaf's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '022 Accused Products. Nanoleaf's Canvas and Aurora are representative examples of '022 Accused Products and are shown below to demonstrate infringement of the '022 Patent.

130.    Claim 1 of the '022 Patent recites:

A lighting system comprising a plurality of interconnectable polygonal lighting modules, wherein each lighting module has a plurality of connection members, each comprising two connection terminals connectable to different polarities, which are arranged rotationally symmetrically at the lighting module, said lighting system further comprising bridge members, wherein each bridge member comprises bridge terminals and is mountable at two neighboring connection members, each associated with a respective lighting module, to form a bridge providing an electric connection between connection terminals of the connection members, wherein each bridge member comprises four bridge terminals arranged at the corners of a rectangle and diagonally interconnected in pairs, which are connectable to different polarities.

**Nanoleaf Canvas**

131.    To the extent the preamble limits the claim, on information and belief, the Canvas is a lighting system. For example, this limitation is shown below:



132.    On information and belief, the Canvas comprises a plurality of interconnectable polygonal lighting modules. For example, this limitation is shown below.



133.    On information and belief, each lighting module has a plurality of connection members. For example, this limitation is shown below.



134.    On information and belief, each connection member comprising two connection terminals connectable to different polarities. For example, this limitation is shown below.



135.    On information and belief, each connection member is arranged rotationally symmetrically at the lighting module. For example, this limitation is shown below.



136.    On information and belief, the Canvas further comprises bridge members. For example, this limitation is shown below.



137.    On information and belief, each bridge member comprises bridge terminals. For example, this limitation is shown below.



138.    On information and belief, each bridge member is mountable at two neighboring connection members, each associated with a respective lighting module, to form a bridge providing an electric connection between connection terminals of the connection members. For example, this limitation is shown below.



139.    On information and belief, each bridge member comprises four bridge terminals arranged at the corners of a rectangle and diagonally interconnected in pairs, which are connectable to different polarities. For example, this limitation is shown below (the paths between diagonally interconnected pairs are approximate by dash lines).



**Nanoleaf Aurora**

140.    To the extent the preamble limits the claim, on information and belief, the Aurora

is a lighting system. For example, this limitation is shown below:



141.    On information and belief, the Aurora comprises a plurality of interconnectable

polygonal lighting modules. For example, this limitation is shown below.



142.    On information and belief, each lighting module has a plurality of connection members. For example, this limitation is shown below.



143.    On information and belief, each connection member comprising two connection terminals connectable to different polarities. For example, this limitation is shown below.



144.    On information and belief, each connection member is arranged rotationally symmetrically at the lighting module. For example, this limitation is shown below.



145.    On information and belief, the Aurora further comprises bridge members. For example, this limitation is shown below.



146.    On information and belief, each bridge member comprises bridge terminals. For example, this limitation is shown below.



147.    On information and belief, each bridge member is mountable at two neighboring connection members, each associated with a respective lighting module, to form a bridge providing an electric connection between connection terminals of the connection members. For example, this limitation is shown below.



148.    On information and belief, each bridge member comprises four bridge terminals arranged at the corners of a rectangle and diagonally interconnected in pairs, which are connectable to different polarities. For example, this limitation is shown below (the paths between diagonally interconnected pairs are approximate by dash lines).



149.    The full extent of Nanoleaf's infringement is not presently known to Signify. On information and belief, Nanoleaf has made and sold, or will make and sell, products under different names or part numbers that infringe the '022 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '022 Patent that is infringed and each product that Signify is aware of that infringes the '022 Patent in accordance with the applicable scheduling order in this case.

150.    On information and belief, Nanoleaf has been aware of and has had notice of the '022 Patent and its infringement of the '022 Patent at least as early as January 24, 2020, when it received a notice from Signify informing it of the same.

151.    On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '022 Accused Products on or after Nanoleaf first had notice of Signify's allegations of infringement, Nanoleaf indirectly infringes and continues to indirectly infringe at least claim 1 of the '022 Patent by active inducement under 35 U.S.C. § 271(b). Nanoleaf has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '022 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Nanoleaf has engaged in such conduct despite knowing that such conduct would and was intended to result in direct infringement by Nanoleaf's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '022 Accused Products in the United States. Nanoleaf has performed and continues to perform these affirmative acts with knowledge of the '022 Patent and with knowledge that such actions would induce infringement of the '022 Patent by Nanoleaf's direct and indirect customers.

152.    On information and belief, by continuing to make, use, sell, offer to sell and/or import the '022 Accused Products on or after Nanoleaf first had notice of Signify's allegations of infringement, Nanoleaf indirectly infringes and continues to indirectly infringe at least claim 1 of the '022 Patent by contributorily infringing under 35 U.S.C. § 271(c). Nanoleaf's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '022 Accused Products and components thereof, including drivers within the '022 Accused Products, in this District and

elsewhere in the United States, contribute to Nanoleaf's customers and end-users directly infringing the '022 Patent. The '022 Accused Products and components thereof are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Nanoleaf to be especially made or especially adapted for use in infringement of the '022 Patent.

153.    On information and belief, Nanoleaf has performed and continues to perform the above-identified acts of infringement with knowledge of the '022 Patent and with intent, or willful blindness, that they cause the direct and indirect infringement of the '022 Patent. Accordingly, Nanoleaf's continued infringement of the '022 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

154.    On information and belief, Signify has suffered and continues to suffer damages as a result of Nanoleaf's infringement of the '022 Patent in an amount to be determined at trial.

155.    On information and belief, Nanoleaf's infringement of the '022 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless Nanoleaf is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '022 Patent.

156.    On information and belief, and in light of the allegations above, including Nanoleaf's willful infringement of the '022 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## COUNT SIX

### (Infringement of U.S. Patent No. 7,358,961)

157.    Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

158.    On information and belief, Nanoleaf has directly infringed claims of the '961 Patent, including at least claim 10, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products including Nanoleaf's Smart Bulbs, Blocks, Canvas, Lines, Shapes, Aurora, Smart Lightstrips, Multicolor Lightstrips, Multicolor Floor Lamp, Skylight, Downlight, Outdoor String Lights, Holiday String Lights, and/or other products with substantially similar features (collectively, the "'961 Accused Products").

159.    Signify names these exemplary infringing instrumentalities to serve as notice of Nanoleaf's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '961 Accused Products. Nanoleaf's Smart Bulbs are a representative example of '961 Accused Products and are shown below to demonstrate infringement of the '961 Patent.

160.    Claim 10 of the '961 Patent recites:

A LED lighting system, comprising:

a LED light source including a plurality of colored LEDs operable to emit one of a plurality of spectral outputs as a function of at least one current flowing through said plurality of colored LEDs, each current of the at least one current having a variable time average flow;

a user interface operable to facilitate a first user selection of a first spectral output from the plurality of spectral outputs, the user interface including a touch screen operable to facilitate the first user selection of a first color point corresponding to the first spectral output; and

a controller in electrical communication with said user interface and said LED light source to control the variable time average flow of each current flowing through said plurality of colored LEDs as a function of the user selection of the first spectral output.

161.    To the extent the preamble limits the claim, on information and belief, the Smart Bulb is an "LED lighting system." For example, this limitation is shown below.

 

162.    On information and belief, the Smart Bulb comprises "a LED light source including a plurality of colored LEDs operable to emit one of a plurality of spectral outputs as a function of at least one current flowing through said plurality of colored LEDs, each current of the at least one current having a variable time average flow." For example, this limitation is shown below.



163.    On information and belief, the Nanoleaf Smart App, which controls the Smart Bulb, comprises "a user interface operable to facilitate a first user selection of a first spectral output from the plurality of spectral outputs, the user interface including a touch screen operable to facilitate the first user selection of a first color point corresponding to the first spectral output." For example, this limitation is shown below.



164.    On information and belief, the Smart Bulb comprises "a controller in electrical communication with said user interface and said LED light source to control the variable time average flow of each current flowing through said plurality of colored LEDs as a function of the user selection of the first spectral output." For example, this limitation is shown below.



165.    The full extent of Nanoleaf's infringement is not presently known to Signify. On information and belief, Nanoleaf has made and sold products under different names or part numbers that infringe the '961 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '961 Patent that is infringed and each product that Signify is aware of that infringes the '961 Patent in accordance with the applicable scheduling order in this case.

166.    On information and belief, Nanoleaf has been aware of and has had notice of the '961 Patent and its infringement of the '961 Patent at least as early as November 26, 2018, when it received a notice from Signify informing it of the same.

167.    On information and belief, by continuing to make, use, sell, offer to sell, and/or import the '961 Accused Products on or after Nanoleaf first had notice of Signify's allegations of infringement, Nanoleaf indirectly infringed at least claim 10 of the '961 Patent by active inducement under 35 U.S.C. § 271(b). Nanoleaf has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '961 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Nanoleaf has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by Nanoleaf's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '961 Accused Products in the United States. Nanoleaf has performed

these affirmative acts with knowledge of the '961 Patent and with knowledge that such actions would induce infringement of the '961 Patent by Nanoleaf's direct and indirect customers.

168.    On information and belief, by continuing to make, use, sell, offer to sell and/or import the '961 Accused Products on or after Nanoleaf first had notice of Signify's allegations of infringement, Nanoleaf indirectly infringed at least claim 10 of the '961 Patent by contributorily infringing under 35 U.S.C. § 271(c). Nanoleaf's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '961 Accused Products and components thereof, including drivers and applications (e.g., mobile device applications) within the '961 Accused Products, in this District and elsewhere in the United States, contributed to Nanoleaf's customers and end-users directly infringing the '961 Patent. The '961 Accused Products and drivers and applications (e.g., mobile device applications) made for use with the '961 Accused Products are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Nanoleaf to be especially made or especially adapted for use in infringement of the '961 Patent.

169.    On information and belief, Nanoleaf has performed the above-identified acts of infringement with knowledge of the '961 Patent and with intent, or willful blindness, that they cause the direct and indirect infringement of the '961 Patent. Accordingly, Nanoleaf's infringement of the '961 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

170.    On information and belief, Signify has suffered damages as a result of Nanoleaf's infringement of the '961 Patent in an amount to be determined at trial.

171.    On information and belief, and in light of the allegations above, including Nanoleaf's willful infringement of the '961 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## PRAYER FOR RELIEF

WHEREFORE, Signify prays for the following judgments and relief:

(a)    A judgment that Nanoleaf has infringed and is infringing the Patents-in-Suit;

(b)    A permanent injunction against Nanoleaf and its affiliates, subsidiaries, assignees, employees, agents or anyone acting in privity or concert from infringing the Patents-in-Suit, including enjoining the making, offering to sell, selling, using, or importing into the United States products claimed in any of the claims of the Patents-in-Suit; using or performing methods claimed in any of the claims of the Patents-in-Suit; inducing others to use and perform methods that infringe any claim of the Patents-in-Suit; or contributing to others using and performing methods that infringe any claim of the Patents-in-Suit, until the expiration of the Patents-in-Suit;

(c)    A judgment that Nanoleaf's infringement of the Patents-in-Suit was willful and that Nanoleaf's continued infringement of the Patents-in-Suit is willful;

(d)    An award of damages adequate to compensate Signify for Nanoleaf's patent infringement, and an accounting to adequately compensate Signify for the infringement, including, but not limited to, lost profits and/or a reasonable royalty;

(e)    An award of pre-judgment and post-judgment interest at the maximum rate allowed by law;

(f)    An award of damages for willful infringement;

(g)    An order finding that this is an exceptional case and awarding Signify its costs, expenses, disbursements, and reasonable attorneys' fees related to Nanoleaf's patent infringement under 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and

(h)    Such other further relief, in law or equity, as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Signify hereby demands trial by jury on all claims and issues so triable.

Dated: April 22, 2025

Respectfully submitted,

By: */s/ Jeremy P. Oczek*

Jeremy P. Oczek (JO1975)
BOND, SCHOENECK & KING, PLLC
200 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 416-7037
Email: jpoczek@bsk.com

Jonathan L. Gray
BOND, SCHOENECK & KING, PLLC
(*Pro hac vice* application forthcoming)
One Lincoln Center
Syracuse, New York 13202
Telephone: (315) 218-8621
Email: jlgray@bsk.com

***COUNSEL FOR PLAINTIFF***
***SIGNIFY HOLDING B.V.***